# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

**UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY, ex rel. DAVID FREEDMAN,**

      **Plaintiffs,**

   **v.**

**BAYADA HOMES HEALTH CARE, INC. *et al.*,**

      **Defendants.**

</td>
<td>

**Case No. 17–cv–06267–ESK–AMD**

 

**OPINION**

</td>
</tr>
</table>

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on defendant Medical University of South Carolina's ("MUSC") motion to unseal (Motion to Unseal) (ECF No. 124) and BAYADA Home Health Care, Inc. ("BAYADA") and David Baiada's ("Baiada") (collectively, the "BAYADA Defendants") unopposed motion to seal (Motion to Seal) (ECF No. 126). For the following reasons, the Motion to Unseal will be GRANTED in part and DENIED in part. The Motion to Seal will be GRANTED.

## BACKGROUND

    This case is a *qui tam* action brought by Relator alleging violations of the False Claims Act (FCA). On August 18, 2017, Relator filed his initial complaint under seal. (ECF No. 1.) On June 6, 2018, Relator filed a notice to administratively reopen case for limited purpose of filing an amended complaint (Notice to Reopen). (ECF No. 3.) The Notice to Reopen advised that the matter had been administratively terminated on October 31, 2017. (ECF No. 3 p.2.) The docket does not reflect that this case had been administratively

terminated during that period.   Also on June 6, 2018, Relator filed a first amended complaint.   (ECF No. 2.)   On June 18, 2018, this Court issued an order staying and administratively terminating the action.   (ECF No. 4.)

On January 26, 2021, the United States filed a motion for an order restoring the matter to the active docket, which was granted that same day (Motion to Restore).   (ECF Nos. 5, 6.)   On January 29, 2021, Relator filed a motion for leave to file a second amended complaint (ECF No. 9), which was granted on June 25, 2021   (ECF No. 15).   The Second Amended Complaint was filed on June 30, 2021.   (ECF No. 16.)

On September 8, 2021, the United States filed a notice of election to intervene in part for settlement purposes and to decline in part.   (ECF No. 19.) On September 27, 2021, the United States and Relator filed a joint stipulation of dismissal, advising that a settlement was reached with defendants BAYADA; BAYADA Health, LLC; and BAYADA Home Care.   (ECF No. 20 ¶2.) Accordingly, the United States and Relator stipulated to dismissal of claims against these defendants.   The United States and Relator also stipulated to dismissal of claims against David Baiada; J. Mark Baiada; Tri-County Home Health and Hospice, LLC; Cape Regional Home Health Care LLC; SCHHA LLC d/b/a MUSC Health at Home, by Bayada.   (*Id.* ¶5.)

On February 8, 2022, the United States filed a motion for extension of time, until August 22, 2022, to determine whether to intervene.   (ECF No. 21.) This Court granted the extension.   (ECF No. 22.)   On February 8, 2022, the United States filed a motion for extension of time until August 22, 2022, to determine whether to intervene.   (ECF No. 21.)   This Court granted the extension.   (ECF No. 22.)

On August 15, 2023, the United States filed a notice of election to intervene in part for settlement purposes and to decline in part and request unsealing of *qui tam* complaint.   (ECF No. 37.)   On August 31, 2023, the

Court lifted the seal on certain documents, specifically both notices of election to intervene filed by the United States, the second amended complaint, and all documents filed after the date of the Court's unsealing order.   (ECF No. 40.)

On October 9, 2023, Relator filed a notice of voluntary dismissal, dismissing claims for expenses and for attorneys' fees and costs against Watermark Retirement Communities, Inc. (Watermark).   (ECF No. 47.)   On November 9, 2023, the United States and Relator filed a joint stipulation of dismissal advising of a settlement with Watermark.   (ECF No. 66 ¶2.) Accordingly, the United States and Relator stipulated to dismissal of Watermark.   (*Id.*)

On September 29, 2023, Relator filed a waiver of service on behalf of BAYADA (ECF No. 45) and Cape Regional Medical Center, Inc. (Cape Regional Medical Center) (ECF No. 48).   On October 9, 2023, Relator filed a waiver of service on behalf of MUSC.   (ECF No. 49.)   On October 17, 2023, Relator filed a waiver of service on behalf of Cape Visiting Nurse Association, Inc. (ECF No. 52), the Visiting Nurse Association of Central Jersey Health Group Inc. (ECF No. 53), and Cape May County (ECF No. 54).

On November 13, 2023, the BAYADA Defendants filed a motion to dismiss (Motion to Dismiss).   (ECF No. 68.)   Then on November 29, 2023, Relator filed a motion for leave to file third amended complaint (Motion to Amend).   (ECF No. 88.)   On December 19, 2023, Relator filed a response to the Motion to Dismiss.   (ECF No. 96.)   The parties then sought, and this Court granted, a stay on any further briefing on the Motion to Dismiss, pending resolution of the Motion to Amend.   (ECF Nos. 98, 99.)   On January 12, 2024, the BAYADA Defendants, Cape Regional Medical Center, and MUSC filed oppositions to the Motion to Amend.   (ECF Nos. 106 to 112.)   In addition, defendants Visiting Nurse Association Health Group, Inc. and Cape Visiting Nurse Association, Inc. filed a letter joining in Cape Regional Medical Center's opposition to the Motion

to Amend.   (ECF No. 113.)   On January 26, 2023, Relator filed replies to the BAYADA Defendants' and MUSC's opposition to the Motion to Amend.   (ECF Nos. 119, 120.)   On January 29, 2024, the United States filed a letter that advised that it was not taking a position on the Motion to Amend, but "to correct factual and legal errors in the submissions by Cape Regional Medical Center and MUSC."   (ECF No. 122 (citations omitted).)

On February 9, 2024, MUSC filed the Motion to Unseal, which seeks to unseal certain documents filed before the Government made its decision on intervention.   (ECF No. 124.)   That same day, the BAYADA Defendants filed an unopposed Motion to Seal exhibits to its brief opposing the Motion to Amend. (ECF No. 126.)   Relator filed a response to the Motion to Unseal on February 22, 2024.   (ECF No. 128.)   The United States filed a response to the Motion to Unseal on February 23, 2024.   (ECF No. 129.)   On February 26, 2024, MUSC filed its reply in further support of the Motion to Unseal.   (ECF No. 130.)

## LEGAL STANDARD

Requests to seal are governed by Local Civil Rule (Local Rule) 5.3, which requires a request to seal to be presented by motion, and that the motion papers describe: "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."   L. Civ. R. 5.3(c)(2).

There is a "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).   In order to overcome the presumption of a public right of access, the movant "must demonstrate that 'good cause' exists for the protection of the material at issue." *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-04394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006).   "Good cause exists when a party makes a

4

particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

A motion to seal should be granted when the movant demonstrates that the information is confidential in nature such that allowing the general public to access the information will cause a specific and serious injury. *Pansy*, 23 F.3d at 786. "Circumstances weighing against confidentiality exist" when: (1) "confidentiality is being sought over information important to public health and safety"; (2) "when the sharing of information among litigants would promote fairness and efficiency"; (3) when "a party benefiting from the order of confidentiality is a public entity or official"; and (4) "when the judicial record involves matters of legitimate public concern." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222–23 (3d Cir. 2011) (*quoting Pansy*, 23 F.3d at 787–78) (internal quotations omitted).

A motion to unseal in a *qui tam* action is governed by the same standard as a motion to seal judicial records. *United States v. Janssen Therapeutics*, 795 F. App'x 142, 145 (3d Cir. 2019). "When the Court lifts the seal on the case, the question of whether or not to keep the seal on any extension requests and other filings is a matter for the court's exercise of discretion." *United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 401 (E.D. Pa. 2018).

## ANALYSIS

### I.   MOTION TO UNSEAL

MUSC seeks to unseal ECF Nos. 1–11, 13, 15, 17, 18, 20–24, 28, 34, and 35. (ECF No. 124-1 p.7.)   Relator has advised that he "does not oppose the unsealing of ECF Nos. 1–4, 7–11, 13, 15, 18, and 20, but defers to the [G]overnment's position on the remaining sealed docket entries, which relate to the [G]overnment's letters or motions." (ECF No. 128 p.1.)   The Government

does not oppose unsealing ECF Nos. 1, 2, 4, 6–11, 13, 15, 18, 20, 22, 24, and 35. These documents will be unsealed.

This leaves in dispute ECF Nos. 3, 5, 17, 21, 23, 28, and 34 (Disputed Documents). These Disputed Documents include the Notice to Reopen (ECF No. 3), the Motion to Restore (ECF No. 5), an *ex parte* application for partial lifting of the seal upon the United States's filing of its notice of its election (*Ex Parte* Application) (ECF No. 17), and four motions for extension of time for the case to remain under sealed and for the United States to determine whether to intervene (Four Motions for Extension of Time) (ECF Nos. 21, 23, 28, and 34).

With respect to the first factor of Local Rule 5.3(c)(2)—the nature of the materials at issue—the Government explains that the extension applications were submitted "to confidentially inform the Court of its investigative activities and to demonstrate good cause for extending the seal. … [T]he Government revealed in each extension request the details and progress of its confidential investigations, identified concurrent investigative steps and additional investigative steps that could be taken, and described its evidentiary analysis." (ECF No. 129 p.2.)

While the FCA specifically provides for the eventual unsealing of the relator's complaint, it does not require the unsealing of the Government's applications for extensions of the 60-day seal period, which are required to be filed *in camera*. *See* 31 U.S.C. § 3730(b)(2), (3); *see also United States ex rel. Stephens v. Prabhu*, No. CV-S-92-653, 1994 WL 761236 at *1 (D. Nev. Dec. 9, 1998) ("Neither [§3730(b)(3)] nor any other provision of the FCA, however, directs the court to unseal the motions for enlargement of the time filed *in camera*."). "Where, as in the documents at issue here, the [G]overnment reveals details of its investigation or its litigation strategy, the [FCA] creates a strong inference that these *in camera* pre-intervention filings should remain under seal. *See* 31 U.S.C. 3730(b)(2),(3)." *United States ex rel. Monahan v.*

*St. Barnabas Health Care Sys., Inc.*, No. 02-5702, 2009 WL 10733720, at *3 (D.N.J. Feb. 10, 2009).   The majority of courts to address the issue of whether an *in camera* extension request should be unsealed after the Government has acted with respect to intervention "have found that '[i]n permitting *in camera* submissions, the statute necessarily invests the court with authority to preserve secrecy of such items or make them available to the parties.'"   *United States ex rel. Powell v. Aerocare Holdings, Inc.*, No. 18-00286, 2022 WL 829497, at *4 (W.D. Ky. Mar. 18, 2022) (collecting cases).

I have examined the Disputed Documents to determine whether each includes details of the investigation or litigation strategy.   The Notice to Reopen (ECF No. 3) does not contain sensitive information and will be unsealed. The Motion to Restore (ECF No. 5), the *Ex Parte* Application (ECF No. 17), and the Four Motions for Extension of Time (ECF Nos. 21, 23, 28, and 34) contain details of the Government's investigation and may reveal litigation strategy. Thus,  considering *in camera* filings required by the FCA, they are the type of document that may overcome the presumption of the public's right of access.

For the second factor—the legitimate private or public interests—MUSC argues that it "has a right to access the currently sealed materials to determine whether it is appropriate for MUSC to move for dismissal or mount other defenses based upon the procedural history of the case."   (ECF No. 124-1 p.8.) In the opinion on Relator's motion for leave to file a third amended complaint that is being issued on the same day as this opinion, I address the procedural challenge that MUSC references here and determined that that challenge does not warrant dismissal.   MUSC suggests that there may not have been good cause shown for an extension of the seal.   However, "[u]nder the [FCA], this Court has the discretionary authority to determine whether the sixty-day period during which the original complaint is sealed should be extended for good cause shown."   *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F. Supp.

189, 192 (E.D. Mo. 1995).   This Court determined that good cause was shown for the extension.

Next, MUSC asserts that it may need access to the Disputed Documents to demonstrate other substantive defenses.   However, as the Government stated in its brief and communicated to MUSC, there is no substantive discussion of MUSC in the Disputed Documents.   Moreover, where alternative means exist for defendant to obtain the factual information it may need to defend itself, the defendant's interest in the sealed materials is outweighed by the government's interest in maintaining investigative materials under seal. *See, e.g., United States ex rel. Stephens v. Prabhu*, 1994 WL 761236 (D. Nev. 1994) (noting governmental interest in non-disclosure of documents describing deliberative process); *Foglia v. Renal Ventures Mgmt., LLC*, No. 09-1552, 2010 WL 11718207, at *2 (D.N.J. Dec. 23, 2010).   If MUSC is unable to obtain relevant information that it believes is in the Disputed Documents through the discovery process, MUSC can seek discovery of that information through appropriate discovery motions.

As to the third factor, the Government describes the harm caused by unsealing here: "Unsealing these confidential filings could have a chilling effect on the Government's future disclosures and could provide an investigatory roadmap for future defendants."  (ECF No. 129 p.2.)  The disclosure of investigatory and legal strategies that would occur from unsealing the documents filed prior to the Government's decision on intervention constitutes a harm that is not outweighed by the public's right to access.   *United States ex rel. Monahan v. St. Barnabas Health Care Sys., Inc.*, No. 02-5702, 2009 WL 10733720, at *4 (D.N.J. Feb. 10, 2009) ("given the investigatory and legally strategic nature of the pre-intervention filings as well as the unique statutory scheme of the [FCA], the government's applications for extensions of the sixty-day investigative period and its motions for partial lifting of the seal shall

remain under seal until further order from this Court."); *United States ex rel. Powell v. Aerocare Holdings, Inc.*, No. 18-00286, 2022 WL 829497, at \*5 (W.D. Ky. Mar. 18, 2022) ("Courts have kept under seal documents that might jeopardize future investigations, included substantive details the disclosure of which would result in harm, revealed Government strategy, or revealed attorney thought processes.") (collecting cases).

For the final factor, there is no less restrictive means by which to protect the Government's interest as the sealed documents contain sensitive information.

Accordingly, the factors weigh in favor of maintaining the seal on the Disputed Documents, except for the Notice to Reopen (ECF No. 3), which will be unsealed.

## II.   MOTION TO SEAL

In their unopposed Motion to Seal, the BAYADA Defendants seek to seal exhibits 1 through 4 to their memorandum of law in opposition to plaintiff-relator David Freedman's motion for leave to amend and file a third amended complaint (Opposition to Motion to Amend).   These exhibits are at ECF Nos. 107, 108, 109, and 110.

With respect to the first factor—the nature of the materials at issue—the BAYADA Defendants explain that these exhibits consist of internal emails within BAYADA that include both privileged attorney-client communications and commercially sensitive information. (ECF No. 126–1 ¶¶ 10, 15.) Although Relator does not oppose unsealing, Relator denies that any of these documents include privileged or commercially sensitive information.  (ECF No. 126-2 pp. 1–6.)  While Relator may later in the litigation advance an argument as to why these documents are excepted from the attorney-client privilege or do not, in fact, contain commercially sensitive information, my

review indicates that the documents are appropriately treated as such at this stage of the litigation.

Documents protected by the attorney-client privilege, and documents containing commercially sensitive information are the type of documents that may overcome the presumption of public access and warrant sealing. *Argush v. LPL Fin., LLC*, No. 13-7821, 2016 WL 11663241, at *2 (D.N.J. Dec. 7, 2016) ("Courts must also ensure that documents that are protected by the attorney-client privilege are sealed."); *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 664 (D.N.J. 2004) ("A well-settled exception to the right of access is the protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm.") (citation and internal quotations omitted).

For the second factor—the legitimate private or public interests—the BAYADA Defendants have a private interest in maintaining attorney-client privilege and in maintaining the privacy of commercially sensitive information. *In re: Benicar (Olmesarten) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 266353, at *4 (D.N.J. Jan. 21, 2016) ("courts have granted motions to seal where a person or business has a legitimate private interest in preventing public disclosure of 'business agreements, trade secrets, or commercial information.'"). The public, on the other hand, has an interest in court records and proceedings and "has a right to monitor the activities of government agencies and the courts." *United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) (citation omitted).

As to the third factor, I accept that the BAYADA Defendants will be harmed if the exhibits are not sealed because they contain attorney-client communications. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 97 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (holding that even where there may be an exception to the attorney-client privilege, documents must remain sealed).

BAYADA, as the holder of the privilege, could certainly waive the attorney-client privilege, however, it is not clear from its submissions that that is their intent. *See Berardino v. Prestige Mgmt. Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at \*5 (D.N.J. Mar. 21, 2017) ("nor were there any acts evincing a clear intent to waive the attorney-client privilege … ."). The BAYADA Defendants will also be harmed by the disclosure of commercially sensitive information. *In re: Benicar (Olmesarten) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 266353, at \*4 (D.N.J. Jan. 21, 2016) ("Where the moving party has demonstrated disclosure would result in a clearly defined and serious loss of a competitive business advantage, this factor weighs in favor of protecting the disputed document."); *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. No. 15-3103, 2017 WL 870400, at \*3 (D.N.J. Mar. 3, 2017) ("District Courts in the Third Circuit have repeatedly found serious harm in disclosing financial information that would injure a party's standing in the competitive marketplace.").

Regarding the final factor, because the exhibits include attorney-client communications and discuss commercially sensitive information, there is no less restrictive means by which to protect the parties' interests.

Weighing the factors, I find good cause to grant the Motion to Seal.

## CONCLUSION

For the reasons set forth herein, the Motion to Unseal (ECF No. 124) will be granted in part and denied in part and the Motion to Seal (ECF No. 126) will be granted.   An appropriate order accompanies this opinion.

    /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 7, 2024