UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA and THE STATE OF NEW JERSEY** *ex rel.* **DAVID FREEDMAN,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**BAYADA HOME HEALTH CARE, INC.,** *et al.*,<br><br>    **Defendants.** | Case No. 17–cv–06267–ESK–AMD<br><br>OPINION |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on defendant MUSC Strategic Ventures' (MUSC SV) motion to sever, transfer, or dismiss the complaint[1] (ECF No. 172 (Motion)). MUSC SV filed a brief in support of its Motion. (ECF No. 172–1 (Mot. Br.)) Plaintiff David Freedman (Relator) filed an opposition to the Motion (ECF No. 173 (Opp'n. Br.)), and MUSC SV filed a reply brief to Relator's opposition (ECF No. 175).

    For the following reasons, the Motion will be **GRANTED** in part and **DENIED** in part.

    **I.    FACTUAL BACKGROUND**

    This is a *qui tam* case. Because the parties are familiar with the facts and procedural history, which were set forth in my opinion on the Relator's

---

[1] The operative complaint is the third amended complaint (ECF No. 139 (Compl.)).

motion for leave to file a third amended complaint (ECF No. 135), I will provide only those facts and procedural history necessary for a resolution of the Motion.

Relator David Freedman was the director of strategic growth at BAYADA Home Health Care Inc. (BAYADA) from January 2009 to August 2016.[2] (Compl. ¶42.) BAYADA is a corporation headquartered in New Jersey that provides home health care services to approximately 28,000 patients at over 360 locations in 23 states. (*Id.* ¶43.) Cape Regional Medical Center, Inc. (Cape Regional) is a hospital in the Cape May Court House section of Middle Township, New Jersey. (*Id.* ¶45.) Visiting Nurse Association of Central Jersey Home Health Group., Inc. (Visiting Nurses) and Cape Visiting Nurse Association Inc. (Cape VNA) are or were New Jersey non-profit corporations.[3] (*Id.* ¶¶47, 48.) MUSC SV is a South Carolina corporation that supports the Medical University of South Carolina. (*Id.* ¶50.) In the complaint, Relator alleges several schemes in violation of the False Claims Act involving BAYADA and the other entity-defendants.

The County of Cape May (County) solicited bids from healthcare providers to manage its health care agency for a five-year term beginning in March 2010. (*Id.* ¶99.) Cape Regional and Visiting Nurses were the winning bidders. (*Id.* ¶¶100, 102.) After the five-year period concluded, Cape Regional replaced Visiting Nurses with BAYADA and partnered with BAYADA in May 2016 to run the County's health care agency for a five-year term.[4] (*Id.* ¶¶124–26.)

---

[2] BAYADA and David Baiada, the chief executive officer of BAYADA, were defendants in this case until they agreed to a stipulation of dismissal with the government on September 27, 2021. (*See* ECF No. 20.)

[3] The joint venture between Cape Regional and Visiting Nurses was named "Cape VNA" and will be referred to as Cape VNA. Cape VNA was dissolved in 2016. (ECF No. 149 p. 1.)

[4] The joint venture between Cape Regional and BAYADA was named "CRHHC" but will be referred to as "Cape BAYADA."

2

Relator alleges that the structure of Cape VNA was as follows: Visiting Nurses provided Cape Regional with 50% equity in the joint venture in exchange for home health and hospice referrals between June 2010 and May 2016, which allegedly resulted in unlawful kickbacks. (*Id.* ¶¶ 18–26.) Subsequently, Cape VNA utilized the patient referrals to submit claims to Medicare for payment. (*Id.* ¶ 18.) Visiting Nurses was responsible for all managerial tasks in Cape VNA, and Cape Regional's only substantive responsibility in the partnership was to refer patients to Cape VNA. (*Id.* ¶ 24.)

Relator alleges that the structure of Cape BAYADA was as follows: BAYADA provided Cape Regional with 50% ownership in the partnership in exchange for $350,000 and patient referrals. (*Id.* ¶ 11.) BAYADA conducted all tasks in the partnership, and the projected revenue of Cape BAYADA far exceeded Cape Regional's $350,000 investment. (*Id.* ¶¶ 11, 12.) Like Cape VNA, Cape BAYADA submitted claims based on patient referrals to Medicare for payment. (*Id.*) BAYADA conducted all tasks in the partnership, except providing patient referrals, which was Cape Regional's only substantive responsibility in the joint venture. (*Id.* ¶ 11.)

Relator further alleges that MUSC SV partnered with BAYADA in similar kickback "schemes" in 2015 and 2016.[5] (*Id.* ¶¶ 14–16.) MUSC SV BAYADA was formed to provide home health care services in South Carolina to patients discharged from the Medical University of South Carolina. (*Id.* ¶ 14.) BAYADA provided MUSC SV with a 49% ownership stake in MUSC SV BAYADA in exchange for patient referrals and a capital investment of $245,000. (*Id.* ¶¶ 14, 15.) Due to the projected revenue of MUSC SV BAYADA, MUSC SV's $245,000 investment purportedly did not justify 49%

---

[5] The joint venture between MUSC SV and BAYADA was named "SCHHA, LLC" but will be referred to as "MUSC SV BAYADA."

3

equity in the partnership. (*Id.* ¶ 15.) MUSC SV's patient referrals resulted in claims that were submitted to Medicare for reimbursement. (*Id.* ¶ 16.)

As to each joint venture, Relator alleges that the claims submitted to Medicare and other government health care programs for reimbursement were "tainted" by the kickback scheme. (*Id.* ¶¶ 210, 225, 240.)

Relator asserts the following claims against MUSC SV, Cape Regional, Cape VNA, and Visiting Nurses: (1) violation of 31 U.S.C. § 3729(a)(1)(A), False Claims Act; (2) violation of § 3729(a)(1)(C), False Claims Act–Conspiracy; and (3) violation of N.J. Stat. Ann. §§ 2A:32C–1, *et seq.*, New Jersey False Claims Act. Relator claims that venue is proper in the District of New Jersey because:

> a substantial part of the events giving rise to the claims occurred in this District, and a number of the [d]efendants reside in and/or transact business in this District by, among other things, administering home health care services, operating retirement communities, governing a County, operating a major medical center, and engaging in illegal arrangements to pay and receive kickbacks to induce patient referrals made within this district.

(*Id.* ¶ 40.)

## II. STANDARD

### A. Severance under Rule 21

Federal Rule of Civil Procedure (Rule) 20(a)(2) provides that a person may be joined in one action as a defendant if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rules 20 and 21 are connected, in that "if conditions (A) and (B) of Rule 20 are not met, a court may sever or dismiss the improperly joined defendant so long as that will not prejudice a substantial right to remedy

4

improper joinder pursuant to Rule 21." *Burns v. Bos. Sci. Corp.*, 18–12323, 2019 WL 1238829, at *4 (D.N.J. Mar. 18, 2019).

When courts apply Rule 20, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Notwithstanding the flexibility of Rule 20, the rule does not allow joinder of unrelated claims and defendants in one action. *Live Face on Web, LLC v. Green Tech. Serv.*, 14–182, 2014 WL 2204303, at *3 (D.N.J. May 27, 2014).

### B. Venue

Rule 12(b)(3) permits a court to dismiss a matter that is filed in an improper venue. The general venue statute, 28 U.S.C. §1391(b), provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"[D]efendant[s] should ordinarily bear the burden of showing improper venue in connection with a motion to dismiss." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982). When deciding a motion for improper venue, the Court "accepts the plaintiffs['] well-pled allegations regarding venue as true, … draws all reasonable inferences from those allegations in the plaintiffs['] favor, and … resolves any factual conflicts in the plaintiffs[']

favor[.]" *Shah v. Centurum, Inc.*, No. 10–2015, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011) (quoting *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8 (D.D.C. 2003)).

If a case falls into at least one of the §1391(b) categories, venue is proper. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). If, however, the case does not fall into a §1391(b) category, venue is improper, and the case must be dismissed or transferred pursuant to 28 U.S.C. §1406(a). *Id.* Section 1406(a) provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court has broad discretion in determining whether to dismiss or transfer a case due to improper venue. *See Konica Minolta, Inc. v. ICR Co.*, No. 15–1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015). But "dismissal is considered to be a harsh remedy … and transfer of venue to another district court in which the action could originally have been brought[] is the preferred remedy." *Id.* (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)). When determining whether to transfer a case to another district, courts must analyze "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Care One, LLC v. N.L.R.B.*, 680 F. Supp. 3d 540, 544 (D.N.J. 2023) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

### III. DISCUSSION

#### A. MUSC SV's Motion to Sever

Here, I find that conditions A and B under Rule 20 do not apply. Therefore, MUSC SV is severed from this case. The alleged scheme involving MUSC SV BAYADA is independent of the schemes involving Cape BAYADA and Cape VNA. There are only two similarities alleged in the complaint between MUSC SV BAYADA, Cape Regional BAYADA, and Cape VNA: (1) each

6

partnership involved one party exchanging referrals and either no capital investment or inequitable capital investment relative to projected revenues of the partnership, for up to equal equity in a joint venture with the other party; and (2) Cape Regional, like MUSC SV, partnered with BAYADA, who is no longer a party in this case. There are no allegations in the complaint that MUSC SV has any relationship with Cape Regional or Visiting Nurses. Accordingly, notwithstanding the flexibility of joinder under Rule 20, the allegations in the complaint against MUSC SV support severance of the claims against MUSC SV. *See Kokinda v. Pa. Dep't of Corr.*, 663 F. App'x 156, 158–59 (3d Cir. 2016) (affirming the district court's decision in a civil rights case to sever defendants because "[s]imply committing the same type of violation in the same way does not link defendants together for the purposes of joinder"); *Live Face on Web, LLC*, 2014 WL 2204303, at *4 (severing claims against unrelated defendants because the alleged copyright infringements were "*independent* acts, at *different* times and locations, and through *distinct* transactions").

### B. MUSC SV's Motion for Improper Venue

MUSC SV seeks to dismiss the case for improper venue. Relator alleges that venue is proper under §1391(b)(2). (Compl. ¶40.) MUSC SV argues that the allegations in the complaint demonstrate the claims' connection only to South Carolina. (Mot. Br. pp.16–19.) Relator counters that MUSC SV is connected to New Jersey because MUSC SV entered into a joint venture with BAYADA, a New Jersey company, and similar schemes underlying Cape BAYADA and Cape VNA occurred in New Jersey. (Opp'n Br. pp.24, 25.)

Here, I agree with MUSC SV that the allegations in the complaint show that a "substantial part of the events" giving rise to claims against MUSC SV did not occur in New Jersey. *See* 28 U.S.C. §1391(b)(2). Relator alleges that MUSC SV is incorporated in South Carolina and that the purpose of MUSC SV BAYADA was to expand Medical University of South Carolina's "capabilities to

serve its patients in a nine county area" in South Carolina. (Compl. ¶¶ 50, 157.) MUSC SV's only connection to New Jersey is through BAYADA.

As stated above, Relator's claims against MUSC SV originate from an alleged kickback scheme involving a 49% ownership stake in MUSC SV BAYADA in exchange for MUSC SV's referrals. Relator further alleges that BAYADA submitted claims to Medicare and other government health care programs that were "tainted" by the kickbacks. (*Id.* ¶ 240.) Relator does not allege where the claims submitted to Medicare by BAYADA, which is the basis for the False Claims act claim against MUSC SV, were filed. Although BAYADA is headquartered in New Jersey, "BAYADA provides home health care services to some 28,000 patients, at over 360 locations, in 23 states." (*Id.* ¶ 43.) Based on the allegations in the Complaint, I cannot plausibly infer that the claims were submitted in New Jersey. Because New Jersey is not a proper venue under any of the §1391(b) categories, I must determine whether to dismiss or transfer this case to another district.

I find that the District of South Carolina would be an appropriate transferee court. The claims against MUSC SV could have been brought in the District of South Carolina because the District of South Carolina has personal jurisdiction over MUSC SV, which is incorporated in South Carolina. §1406(a); *see* §1391(b)(3). Moreover, for the reasons set forth above, the "interests of justice" and South Carolina's strong interest in the claims against

8

MUSC SV outweigh the inconvenience Relator may face litigating this action in the District of South Carolina.[6]  *See Care One, LLC*, 680 F. Supp. 3d at 544.[7]

However, to avoid potential confusion for the transferee court, the preferable procedure is to dismiss the severed claims against MUSC SV and permit Relator to file a new complaint against MUSC SV in the appropriate court in South Carolina.  A transfer of only the severed claims against MUSC SV would be procedurally cumbersome.  That procedure would require the Relator, after transfer, to file a further amended complaint, which would allege only the claims against MUSC SV.  Accordingly, I will dismiss the severed claims against MUSC SV for improper venue.

---

[6] In determining the appropriate venue, a court should consider: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.  A court must also weigh several public interests including: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Jumara*, 55 F.3d at 879.  Although a plaintiff's choice of venue is of "paramount consideration and 'should not be disturbed lightly,'" *United States v. Warren*, No. 21–4511, 2022 WL 2718714, at *4 (E.D. Pa. July 13, 2022), I find that consideration of the other factors weighs heavily in favor of South Carolina as the appropriate venue.  South Carolina has a strong interest in the alleged misconduct affecting its own academic-medical center, its resident-patients, and its medical providers.  As to MUSC SV, it does not transact business in New Jersey, and its alleged bad acts occurred in South Carolina.  And, although BAYADA provided administrative services for the joint venture, BAYADA's support does not outweigh South Carolina's strong interest in the claims in this matter.

[7] Because the claims against MUSC SV will be dismissed for improper venue, the portion of the Motion seeking to dismiss the complaint for failure to state a claim will be denied without prejudice.

## IV. CONCLUSION

The aspects of MUSC SV's Motion to sever the claims against it and dismiss for improper venue are **GRANTED**.  MUSC SV's motion to dismiss for failure to state a claim is **DENIED** without prejudice.  An order will accompany this Opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Date: September 30, 2025