UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA and THE STATE OF NEW JERSEY** *ex rel.* **DAVID FREEDMAN,**<br><br>      **Plaintiffs,**<br><br>v.<br><br>**BAYADA HOME HEALTH CARE, INC.,** *et al.***,**<br><br>      **Defendants.** | Case No. 17–cv–06267–ESK–AMD<br><br>OPINION |

**KIEL, U.S.D.J.**

      **THIS MATTER** is before the Court on the following: (1) Cape Regional Medical Center, Inc.'s (Cape Regional) motion to dismiss the complaint[1] (ECF No. 176 (Cape Regional Motion)); and (2) Cape Visiting Nurse Association Inc. (Cape VNA) and the Visiting Nurse Association of Central Jersey Health Group Inc.'s (Visiting Nurses) (collectively, Visiting Nurse Defendants) motion to dismiss counts four, five, and six of the Complaint (ECF No. 177 (Visiting Nurse Defendants Motion)). Cape Regional and Visiting Nurse Defendants filed briefs in support of their motions. (ECF Nos. 176–1 (Cape Regional Br.); ECF No. 177–1 (Visiting Nurse Def. Br.)) Plaintiff filed a consolidated opposition to Cape Regional and Visiting Nurse Defendants' Motions. (ECF No. 180

---

[1] The operative complaint is the third amended complaint (Complaint) (ECF No. 139 (Compl.)).

(Opp'n Br.).)  Cape Regional and Visiting Nurse Defendants filed reply briefs to the plaintiff's opposition.  (ECF Nos. 181, 182.)

For the following reasons, the Cape Regional Motion will be **DENIED**, and the Visiting Nurse Defendants' Motion will be **DENIED** in part.

## I.  FACTUAL BACKGROUND

I incorporate by reference the factual background in the opinion on MUSC Strategy Ventures' motion to sever, transfer, or dismiss the complaint.  (ECF No. 194).

## II.  STANDARD

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure (Rule) 12(b)(6), courts must accept all well-pleaded allegations as true and view them in the light most favorable to the non-moving party.  *Makky v. Chertoff*, 489 F. Supp. 2d 421, 429 (D.N.J. 2007).  A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 675).  "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S.

at 679). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

A claim under the False Claims Act (FCA) is subject to the heightened pleading standard of Rule 9(b). *See In re Plavix Mktg., Sales Prac. & Prods. Liab. Litig. (No. II)*, 332 F. Supp. 3d 927, 938 (D.N.J. 2017). "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002) (*Rockefeller*). Rule 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, a party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *Rockefeller*, 311 F.3d at 217)). To satisfy the particularity standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to ensure that defendants are placed on notice of the "precise misconduct with which they are charged, and to safeguard defendants against spurious charges" of fraud. *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984)).

### III.  DISCUSSION

"The False Claims Act was adopted in 1863 and signed into law by President Abraham Lincoln in order to combat rampant fraud in Civil War defense contracts."  *U.S. ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 753 (3d Cir. 2017) (quoting *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 575 U.S. 650, 652 (2015)).  The primary purpose of the FCA, 31 U.S.C. § 3729 *et seq.*, "is to indemnify the government—through its restitutionary penalty provisions—against losses caused by a defendant's fraud."  *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001).

The Anti–Kickback Statute (AKS) prohibits any person or entity from knowingly and willfully offering, paying, soliciting, or receiving anything of value to influence the referral of items or services reimbursable by a federal healthcare program.  42 U.S.C. § 1320a–7b(b)(1) and (2).  To prove a violation of the AKS, Relator "must plead that defendants (1) knowingly and willfully; (2) solicit[ed] or receive[d] any remuneration (3) in return for referring an individual to a person for the furnishing ... of any item or service for which payment may be made in whole or in part under a Federal health care program."  *U.S. ex rel. Perri v. Novartis Pharm. Corp.*, 15–6547, 2019 WL 6880006, at *10 (D.N.J. Feb. 21, 2019) (*Perri*) (internal quotations omitted). "When a plaintiff alleges a predicate AKS violation in support of an FCA claim, 'the relevant task for [] [a] [c]ourt is to determine whether [d]efendants violated ... the Anti–Kickback Statute."  *Id.* (internal quotations omitted).  "The submission of a Medicare claim in violation of [the AKS] will establish a 'legally false' claim under the FCA."  *Jensen v. Genesis Lab'y*, No. 20–15121, 2025 WL 615480, at *14 (D.N.J. Feb. 26, 2025) (quoting *U.S. ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 665 (W.D. Pa. 2014)).

A.  **Remuneration**

Remuneration includes the transfer "of items or services for free or for other than fair market value."  42 U.S.C. §1320a–7a(i)(6).  "Courts generally interpret the term remuneration expansively to include anything of value in any form whatsoever."  *U.S. ex rel. Gohil v. Sanofi U.S. Serv. Inc.*, 500 F. Supp. 3d 345, 359 (E.D. Pa. 2020).

Relator alleges that Cape Regional's 50% ownership in Cape VNA in exchange for referrals is remuneration.  (Compl. ¶¶18–26.)  Visiting Nurse Defendants argue that Relator has not sufficiently pled remuneration because Relator failed to demonstrate how Visiting Nurses offering Cape Regional a 50% ownership stake in Cape VNA represents "illegal kickback renumeration" under the AKS.  (Visiting Nurse Def. Br. pp.19, 20.)  In support of their argument, Visiting Nurse Defendants note that the alleged schemes in Cape BAYADA and MUSC SV BAYADA involved capital contributions in exchange for ownership in the joint ventures.[2]  (*Id.* p.20.)  In contrast, Relator does not allege that Cape Regional made any capital contribution into Cape VNA.  (*Id.* p.21.)

The opinion in *Perri* is instructive.  In that case, the defendant argued that to allege a *prima facie* claim under the AKS, the relator must plausibly allege that the transaction in question was "commercially unreasonable" or priced at a rate other than fair market value.  *Perri*, 2019 WL 6880006, at *13.  The court rejected that position and noted that whether a transaction was "commercially unreasonable" or priced at a rate other than fair market value was relevant to the application of the safe–harbor provision of 42 C.F.R.

---

[2] The joint venture between Cape Regional and BAYADA was named "CRHHC" but will be referred to as "Cape BAYADA."  Likewise, the joint venture between MUSC SV and BAYADA was named "SCHHA, LLC" but will be referred to as "MUSC SV BAYADA."

5

§ 1001.952. *Id.*; *see U.S. ex rel. Bartlett*, 39 F. Supp. 3d at 664. The court stated that:

> [o]ffering a service or item for fair market value, or not, may surely be a factor in establishing safe harbor compliance, or not. That a certain transaction was not offered for a fair market value is a matter of defense, however, not an essential element of a claim that must be pled in the complaint—provided, of course, that the complaint otherwise pleads facts sufficient to establish remuneration under the broad definition in the statute.

*Perri*, 2019 WL 6880006, at *14.

Moreover, Relator has pled facts sufficient to establish remuneration against Cape Regional and Visiting Nurse Defendants under the AKS. Relator alleges that Cape Regional received 50% equity in Cape VNA and Cape BAYADA, and Visiting Nurses offered 50% ownership to Cape Regional in Cape VNA. (*See* Compl. ¶¶ 11, 24, 102, 104.) Ownership interest in Cape VNA and Cape BAYADA includes the opportunity to obtain profit from the partnership, which is something of value. (*Id.* ¶¶ 24, 102, 125, 126); *see U.S. ex rel. Gohil*, 500 F. Supp. 3d at 359. Accordingly, the allegations are sufficient to show that the transfer and receipt of ownership interests in Cape VNA and Cape BAYADA constitute remuneration. *See U.S. ex rel. Perri*, 2019 WL 68800006, at *14 (stating that Congress intended "remuneration" under the AKS to be interpreted broadly); *U.S. ex rel. Gohil*, 500 F. Supp. 3d at 359.

### B. Inducement

Relator has pled sufficient facts demonstrating that Visiting Nurses provided remuneration and Cape Regional received remuneration to induce Cape Regional to provide patient referrals. Relator alleges that although Visiting Nurses and Cape Regional owned equal shares of Cape VNA and split profits evenly, Visiting Nurses handled all management and operational tasks.

(Compl. ¶¶ 102, 105.) Relator also alleges that while the purpose of Cape VNA was to provide home health care services and hospice services to residents in the County, Cape Regional had "no experience operating a home health agency," while Visiting Nurses "was the largest home care provider of community-based services in New Jersey." (*Id.* ¶¶ 48, 102). In a services agreement, Cape Regional was purportedly tasked with managing "the human resources and marketing affairs" and providing "support and services relating to fundraising activities" in Cape VNA. (*Id.* ¶ 106.) However, the management services were already to be coordinated with Visting Nurses—leaving the referral of patients as Cape Regional's only substantive contribution to Cape VNA. (*Id.*)

With respect to Cape BAYADA, Relator alleges that although Cape Regional invested $300,000 into the partnership, the investment was minimal when compared to Cape Regional's projected annual net revenue of $200,000. (*Id.* ¶¶ 125, 126.) Notwithstanding the substantial projected profits, Cape Regional had no responsibilities in the management and operations of Cape BAYADA and was to only "refer its patients to the joint venture and to promote the agency to its discharge planners, its affiliates and its physicians." (*Id.* ¶ 125.) Relator alleges that Cape VNA and Cape BAYADA were "sham" partnerships because Cape Regional's only substantive contribution to each partnership was to submit patient referrals. (*Id.* ¶¶ 106, 151, 199.)

These allegations (*id.* ¶¶ 106, 125, 126, 151, 199) plausibly allege that Cape Regional's limited responsibility in Cape VNA and Cape BAYADA, relative to its earning potential and equity in the partnerships, was intended to induce Cape Regional to refer patients to Cape VNA and Cape BAYADA. *See Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (noting that under Rule 9(b), it is sufficient for a plaintiff to allege "particular details of

a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted").

### C. Knowingly and Willingly

Relator alleges that Baiada discussed with Cape Regional's CEO, Joanne Carrocino, the importance of Cape Regional's referrals to Cape BAYADA's profitability. (Compl. ¶¶127, 130.) In addition to the allegations supporting inducement, Relator also alleges that, under the terms of the 2010 Services Agreement, Visiting Nurses was responsible for "the development and implementation of such policies and procedures as shall be required or appropriate to assure compliance with [the] law[.]" (*Id.* ¶105.) Despite a "likely … legal compliance review" and "at least six separate … publications hav[ing] provided warnings regarding, among other things, questionable joint venture and renumeration/referral arrangements," defendants proceeded with the alleged schemes. (*Id.* ¶¶81–86, 102, 105, 106). The allegations in the complaint sufficiently allege that Cape Regional knowingly received remunerations to induce Cape Regional's referrals, and Visiting Nurses knowingly offered remunerations to induce Cape Regional's referrals in violation of the AKS. Indeed, even under Rule 9(b)'s heightened pleading standard, "[a]llegations of knowledge may be alleged generally and need not be pled with particularity." *U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 503 (E.D. Pa. 2016); Rule 9(b). And under the AKS, "specific intent to defraud" is not required to prove knowledge. 31 U.S.C. §3729(b)(1)(B).

### D. False Claims Act

To establish a *prima facie* violation of the FCA, a relator must prove that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the

8

defendant knew the claim was false or fraudulent." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304–05 (3d Cir. 2011) (quoting *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004)). Thus, an FCA claim includes four elements: "falsity, causation, knowledge, and materiality." *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017). Because Relator has pleaded facts showing an underlying violation of the AKS, Relator established falsity under the FCA. *U.S. ex rel. Gohil*, 500 F. Supp. 3d at 360.

As to causation,[3] "ordinary causation principles from negligence law" are applicable to the FCA. *U.S. ex rel. Schmidt*, 386 F.3d at 244. The allegations in the complaint must particularly show that the alleged scheme was a substantial factor in bringing about the submission of at least one claim to the federal government for payment and the filing of the claim was a normal consequence of the situation created by that scheme. *See id.* at 244–45 (quoting Restatement (Second) of Torts § 443).

Here, Relator has pled facts sufficient to show causation. Relator alleges throughout the complaint that Cape VNA and Cape BAYADA submitted claims to Medicare and other government health care programs, and those government entities provided payment for those claims. (Compl. ¶¶ 115, 123, 155, 178, 179, 180.) Moreover, the submissions of claims to Medicare and other government health care programs for payment was an integral part of the alleged schemes involving Cape VNA and Cape BAYADA.[4] (*See generally* Compl.)

---

[3] Cape Regional does not present any arguments to support dismissal for failing to sufficiently allege causation, knowledge, or materiality. Visiting Nurse Defendants only raise arguments as to causation.

[4] To the extent Visiting Nurse Defendants rely on *United States ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89 (3d Cir. 2018) in support of their argument that Relator must identify particular patients that were exposed to kickbacks, *Greenfield* applies at the summary judgment stage, (*see id.* p. 98 & n.9) and Visiting

9

Accordingly, Relator has pled facts under Rules 12(b)(6) and 9(b) demonstrating a violation of the FCA.

### E. <u>Public Disclosure Bar</u>

The FCA prohibits claims under the public disclosure bar of 31 U.S.C. § 3730(4)(A). *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294–95 (2010). Section 3730(4)(A) states as follows:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation, or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Section 3730(e)(4)(B) defines an original source as "an individual who either: (1) prior to a public disclosure under subsection (e)(4)([A]), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. §3730(e)(4)(B). "[A] relator materially adds to the publicly disclosed allegation or transaction of fraud when it contributes information—distinct from what was publicly disclosed—that adds in a significant way to the essential factual

---

Nurse Defendants fail to cite to any cases in the Third Circuit or this district where Relators are required to produce identifiable patients at the pleading stage.

background: the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 307.

Cape Regional and Visiting Nurse Defendants argue that because the approvals of state and federal agencies, such as the New Jersey Department of Health and Center for Medicare and Medicaid Services, were necessary to obtain licenses and participate in Medicare programs, information related to both joint ventures was publicly disclosed. (*See* Cape Regional Br. pp. 16–24; Visiting Nurse Def. Br. pp. 43, 44.) Although public entities were involved with Cape BAYADA and Cape VNA, discovery is required to establish the extent and source of the purported publicly disclosed information. *See Franchetti v. Cognizant Tech. Sol. Corp.*, 555 F. Supp. 3d 63, 72–73 (D.N.J. 2021) (at the motion to dismiss stage the court did "not have enough information to determine whether the public disclosure bar applies"). Accordingly, resolution of issues related to the public disclosure bar is more appropriate at the summary judgment stage and upon a full record. *See U.S ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh, P.A.*, 728 F. App'x. 101, 104–07, (3d Cir. 2018) (reversing the district court's dismissal based on the public disclosure bar and remanding for the district court to "consider the public disclosure issue on a full record after discovery").[5]

### F. <u>Statute of Limitations</u>

An action under the FCA must be filed within six years of the alleged violation. 31 U.S.C. § 3731(b). This case was filed on August 18, 2017. (ECF No. 1.) Visiting Nurse Defendants argue that because Relator asserts claims for reimbursements as far back as 2010, any claims for reimbursement submitted prior to August 18, 2011 should be barred by the statute of

---

[5] For the same reasons as the public disclosure bar, the original source exception under § 3730(4)(A) requires a full record before resolution.

11

limitations. (Visiting Nurse Def. Br. p. 46.) Relator counters that determining whether certain claims are barred is premature at this stage. (Opp'n. Br. p. 14.)

I agree with Visiting Nurse Defendants. Cape VNA was created in 2010. To the extent claims to Medicare and/or other government health care programs were submitted prior to August 18, 2011, those claims are barred by the six-year statute of limitations. *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 123 F. Supp. 3d 584, 616 (D.N.J. 2015) ("[T]o the extent that [r]elator alleges that [d]efendants' conduct resulted in the filing of false claims prior to March 30, 2005, six years prior to the filing of the initial Complaint, such claims are dismissed."); *U.S. ex rel. Simpson v. Bayer Corp.*, 2014 WL 1418293, at *12 (D.N.J. April 11, 2014) (finding that conduct predicated on violations of the FCA may proceed to the extent the conduct occurred less than six years prior to the complaint). Accordingly, as to Relator's FCA claim against Visiting Nurse Defendants and Cape Regional, the False Claim Act claim is limited to claims submitted by Cape VNA on or after August 18, 2011.

## IV. CONCLUSION

Cape Regional's motion to dismiss is **DENIED**. Visiting Nurse Defendants' motion to dismiss is **GRANTED** as to the statute of limitations barring claims submitted before August 18, 2011. The remainder of Visiting

Nurse Defendants' motion to dismiss is **DENIED**. An appropriate order will accompany this opinion.

>  /s/ *Edward S. Kiel*
>  **EDWARD S. KIEL**
>  **UNITED STATES DISTRICT JUDGE**

Date: September 30, 2025

13